UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JUANITA E. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01991-TWP-DKL |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Juanita E. Williams ("Mrs. Williams") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").[1] For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

### I. BACKGROUND

**A. Procedural History**

Mrs. Williams filed an application for DIB on May 9, 2006, alleging a disability onset date of January 1, 2000. Her application was denied through the administrative process, but on March 23, 2011, the District Court remanded her case to the Appeals Council, who remanded it back to an administrative law judge in July 2011 to make a disability determination for the relevant period of March 20, 2002 through June 30, 2005, which was Mrs. Williams's date last insured.

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

Specifically, on remand, Administrative Law Judge Albert Velazquez (the "ALJ") was directed to obtain medical expert testimony to understand the severity of the claimant's impairments and whether those impairments alone or in combination, met or medically equaled a listing. (Tr. 578). The ALJ held a hearing in February 2012. On April 25, 2012, the ALJ found that Mrs. Williams was not disabled because she could perform a significant number of jobs in the national economy, despite her limitations. On October 16, 2013, the Appeals Council declined to assume jurisdiction, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

**B.     Factual Background**

Mrs. Williams was 37 years old on her alleged disability onset date and 42 years old on her date last insured. She has a high school education and relevant work history as a licensed practical nurse and cafeteria worker. Mrs. Williams alleges disability due to fibromyalgia, degenerative disc disease, degenerative joint disease of the hips, headaches, obesity, depression and anxiety.

In January 2000, Mrs. Williams underwent a spinal fusion at the L5-S1 level of her lumbar spine. An MRI of Mrs. Williams's cervical spine taken on February 19, 2001, showed disc herniation at the C4-5 and C5-6; possible cord impingement at the C5-6 level; and minor disc degeneration at the C3-4 and C6-7 levels. One week later, she complained of left shoulder pain and numbness in her left hand and fingers. Dr. Patrice Yates observed that Mrs. Williams had pain with limited range of motion; could not lift her left arm above her shoulder; and had a weaker left grip, but an otherwise normal examination. Medication and steroid injections did not relieve her complaints of pain, and on March 30, 2001, Mrs. Williams underwent a discectomy and a decompression and anterior fusion surgery at the C4-5 and C5-6 levels of her cervical spine. Post-surgical x-rays taken throughout 2001 showed no abnormal vertebrae or disc spaces in the cervical spine.

In June 2001, Mrs. Williams complained of right hip pain, and upon examination she favored the right leg and walked with a slight limp. She had early degenerative changes, and Dr. Charles Bartley ("Dr. Bartley") diagnosed Mrs. Williams with premature osteoarthritis in her right hip. In November 2001, Dr. Bartley observed that Mrs. Williams's right hip was very painful to range of motion, but a steroid injection greatly improved the pain. On June 7, 2004, Mrs. Williams saw Dr. Bartley and complained of radiating right hip pain that woke her from her sleep, caused her to limp, have difficulty getting into and out of chairs, and prevented her from carrying her granddaughter and walking in a grocery store. Dr. Bartley noted that recent x-rays showed extensive arthritis developing in Mrs. Williams's right hip and moderate arthritis in her left hip. On June 24, 2004, Mrs. Williams underwent surgery for a total right hip replacement. On July 1, 2004, Mrs. Williams reported that the preoperative pain upon moving her right hip was almost completely gone and that she had only minor discomfort in her right leg. In August 2004, Mrs. Williams reported that her right hip pain was completely gone, but complained that her legs gave out after fifteen minutes of walking.

In December 2004, Mrs. Williams complained of generalized pain in her joints and throughout her upper and lower extremities; however, test results showed no abnormalities suggesting a rheumatoid disease. She also complained of left hip pain. A myelogram of Mrs. Williams's lumbar spine showed mild disc bulging at L2-3 through L4-5, but no spondylolisthesis or arachnoiditis. An x-ray of Mrs. Williams's left hip showed mild degenerative joint disease. Dr. Bartley recommended an epidural injection to treat her complaints of right leg pain and left hip pain. Mrs. Williams also saw Dr. Nancy Miles ("Dr. Miles") in December 2004, who diagnosed her with fibromyalgia and degenerative joint disease.

3

In May 2005, Mrs. Williams saw Dr. Miles and complained of migraine headaches. An x-ray of her cervical spine taken that same day showed severe spondylotic change at the C6-7 level, which is below the area of her prior cervical fusion. Two weeks later, Mrs. Williams saw Dr. Peters for an evaluation of her complaint of neck pain, headaches, and upper extremity weakness over the prior three to five months. He diagnosed her with significant neck pain and severe degeneration at the C6-7 level, ruled out C6-7 stenosis, and significant soft tissue pain. Dr. Peters recommended conservative pain management, such as electrical stimulation or acupuncture. Mrs. Williams continued to be seen for complaints of neck pain and headaches throughout 2005 and 2006. She received a cervical epidural steroid injection in April 2006.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's

impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th

Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Mrs. Williams met the insured status requirements of the Act through June 30, 2005, for purposes of DIB. At step one, the ALJ found that Mrs. Williams had not engaged in substantial gainful activity since January 1, 2000, her alleged onset date. At step two, the ALJ found that Mrs. Williams had the following severe impairments: degenerative joint disease of the cervical and lumbar spine, degenerative joint disease of the bilateral SI joint and total left hip dysfunction, osteoarthritis of the bilateral knees, headaches, fibromyalgia, obesity, depression and anxiety. At step three, the ALJ found that Mrs. Williams does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Mrs. Williams has the RFC to perform sedentary work with the following restrictions: lift and carry 10 pounds occasionally and 5 pounds frequently; stand and walk up to 2 of 8 hours and sit for 6 of 8 hours provided the work would allow her to alternate into a standing or sitting position at her option for up to 1 to 5 minutes at a time during the course of an hour at the work station; no more than occasional balancing, stooping, crouching, and climbing of stairs or ramps, but no kneeling, crawling, or climbing ropes, ladders or scaffolds; no overhead work or rapid head or neck movements; avoid working at unprotected heights, around dangerous moving machinery, operating a motor vehicle, or working around open flames or large bodies of water; and limited to work tasks of a simple and repetitive nature. At step four, the ALJ determined that Mrs. Williams is unable to perform any of her past relevant work. At step five, the ALJ found that

6

considering Mrs. Williams's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, concluding that she is not disabled as defined by the Act.

## IV. ANALYSIS

Mrs. Williams raises three issues for review. First, she argues that the ALJ did not comply with the ruling of the District Court because he failed to consider her impairments in combination in determining that she was not disabled. Second, she argues that the ALJ's credibility determination was not supported by the evidence in the record. Third, Mrs. Williams argues that the RFC assessment did not accurately describe her impairments, specifically failing to account for her moderate impairment in concentration, persistence, or pace by limiting her only to simple, repetitive work.

### A. Consideration of Combined Impairments

Mrs. Williams argues that substantial evidence fails to support the ALJ's decision that she was not disabled due to chronic pain in her head, neck, spine-back, hips and knees. She asserts that the ALJ ignored or rejected evidence proving that she was disabled; however, she does not cite to any evidence from the record that she alleges supports a finding of disability which the ALJ allegedly ignored. Mrs. Williams only generally states that the ALJ did not consider Exhibits A-I (Tr. 464-512) and Exhibits J-W (Tr. 656-807). The Exhibits in question are titled "Claimants Recent Medical Treatment" and contain briefs and hundreds of pages of records which substantiate treatment for neurologic disease but for the most part, indicate that Mrs. Williams tolerates the treatment regimen well and that examinations are unremarkable. Mrs. Williams does not point the Court to any specific evidence within those records that would support her claim and meet her burden of proving disability.

7

Mrs. Williams also states that the ALJ and the medical expert, Dr. Richard Hutson ("Dr. Hutson"), never considered her impairments in combination, as required by the District Court's remand order. However, the remand order stated that a medical expert, which had not previously been called to testify, was necessary to make a determination as to whether Mrs. Williams's impairments, alone or in combination, met or equaled a listing (Tr. 606). The ALJ satisfied this requirement of the order by calling upon Dr. Hutson to testify at Mrs. Williams's second hearing, and citing to his findings on the issue of equivalency by stating "[Dr. Hutson] carefully considered all of the relevant listings . . . and found no impairment, either alone *or in combination*, that would meet or equal a listing." (Tr. 592) (emphasis added). Mrs. Williams does not cite to any evidence in support of her argument that Dr. Hutson did not consider her impairments in combination, nor does she cite to any evidence that would contradict his testimony or otherwise question his credibility. In addition, the ALJ himself explicitly addressed his consideration of Mrs. Williams's combined impairments in his conclusion that she would be able to perform sedentary work. *See* Tr. 586 ("I do not find objective or subjective evidence regarding these *combined conditions* that would preclude her from performing a wide range of sedentary work.") (emphasis added).

Mrs. Williams has not sufficiently supported her argument that the ALJ committed reversible error by failing to consider evidence supporting a finding of disability. She has not cited to any evidence that she claims the ALJ ignored, nor does she explain how such evidence supports a finding of disability. *See Reese v. Astrue*, No. 1:07CV1663WTL-JMS, 2009 WL 499601, at *8 (S.D. Ind. Feb. 27, 2009) (a claimant is "obliged to build his own accurate and logical bridge connecting the omitted evidence and the ALJ's articulation requirement. . . . He should not expect the Court to construct his argument for him. . . . Without a showing that omitted evidence required specific discussion by the ALJ, we find no error."). The Court finds that the ALJ supported his

step three determination with sufficient evidence and has adequately demonstrated that he considered Mrs. Williams's impairments in combination.

**B.     Credibility Determination**

Mrs. Williams argues that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7p and the evidence in the record. Specifically, Mrs. Williams argues that the ALJ did not articulate any legitimate reason for his credibility determination, nor explain why the objective medical evidence did not support her complaints of disabling pain. "An ALJ is in the best position to determine the credibility of witnesses, and we review that determination deferentially. . . . We overturn a credibility determination only if it is patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Contrary to Mrs. Williams's argument that the ALJ's entire credibility determination consisted of a single boilerplate passage that was "backwards" and "illogical," the ALJ did discuss each factor stated in SSR 96-7p, citing to evidence in support of his conclusions. (Tr. 593-94.) For example, the ALJ discussed Mrs. Williams's daily activities of dressing herself, planning simple meals, doing laundry and performing light household chores as not being limiting to the extent one would expect, given Mrs. Williams complaints of disabling symptoms. The ALJ discussed the location, duration, frequency, and intensity of Mrs. Williams's pain or other symptoms, noting that her worst discomfort occurred in the month before her hip3 arthroplasty, but that her pain was greatly alleviated by the surgery. (Tr. 593). The ALJ also acknowledged Mrs. Williams complaints of pain in her neck and arms, plus headaches, in May and June 2005, but noted that the record did not sufficiently document the degree of her discomfort as it contained "little contemporaneous evidence to establish the frequency of the pain, its intensity, and its functional impact." (Tr. 593). The Court finds that the

9

ALJ fully disclosed his reasoning for his credibility determination, and Mrs. Williams has not cited to any evidence showing that the credibility determination was patently erroneous.

C.     **Residual Functional Capacity Determination**

Finally, Mrs. Williams argues that the ALJ failed to support his determination that she could perform some jobs at the sedentary level because he did not accurately describe her impairments and failed to account for her moderate impairment in concentration, persistence or pace. Again, Mrs. Williams does not cite to evidence that she claims contradicts the ALJ's RFC assessment, nor does she provide the Court with an alternative RFC assessment that she alleges to be more consistent with the evidence in the record. Mrs. Williams further alleges that the ALJ failed to account for her combined pain impairments; however, as stated above, the ALJ summoned a medical advisor to testify as to the effects of Mrs. Williams's combined impairments, which supported the ALJ's finding that she would be unable to perform more than sedentary work. (Tr. 592.)

With respect to the ALJ's consideration of Mrs. Williams's moderate impairment in concentration, persistence or pace, the ALJ noted that she has "problems with memory and concentration due to pain, lack of stimulation and not feeling well," and that an individual with a pattern of pain "should not be expected to perform detailed or complex tasks." (Tr. 589, 586.) The ALJ specifically concluded that "a restriction to simple and repetitive work adequately takes her complaints of headaches into account." (Tr. 586.) The ALJ also stated that Mrs. Williams was not "capable of detailed or complex tasks" as a result of her allegations of pain. (Tr. 593.) Thus the ALJ did consider Mrs. Williams's limitations in concentration, persistence, or pace in his determination.

With respect to the adequacy of the hypothetical posed to the Vocational Expert (the "VE"), the ALJ stated that Mrs. Williams would be limited to tasks that are "simple and repetitive." (Tr. 585.) The Seventh Circuit has held that a VE must be informed of deficiencies in a claimant's concentration, persistence, or pace, and "[i]n most cases, . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). However, an ALJ is not required to use the specific terms "concentration, persistence, or pace" in all circumstances, and an exception exists for cases in which the record reveals that the VE independently reviewed the medical evidence or heard the medical testimony that was directly relevant to the deficiencies. *Id.* at 619. In such cases, the VE's familiarity with the claimant's limitations can be assumed despite the gaps in the ALJ's hypotheticals. *Id.* The record shows that the VE, Mr. Barber, was present for Mrs. Williams's hearing, and thus heard the testimony from Mrs. Williams and the medical expert, Dr. Hutson, regarding all of her limitations. (Tr. 810.) Because the VE had the ability to hear all of the medical testimony regarding Mrs. Williams's impairments and limitations, the Court finds that there was no error in the ALJ's RFC as presented to the VE, and Mrs. Williams's limitations in concentration, persistence, or pace were adequately accounted for in the ALJ's step 5 determination.

## V. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ adequately supported his denial determination with sufficient evidence. Therefore, the Court **AFFIRMS** the decision of the Commissioner, and Mrs. Williams's appeal is **DISMISSED**.

11

**SO ORDERED.**

Date: 4/23/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov